IN THE UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF ARKANSAS
CENTRAL DIVISION

AARON WATT                                                                                      PLAINTIFF

V.                                          CASE NO. 4:21-CV-00030 LPR-JTK

KILOLO KIJAKAZI, ACTING COMMISSIONER OF
SOCIAL SECURITY ADMINSTRATION[1]                                        DEFENDANT

RECOMMENDED DISPOSITION

I.    Procedures for filing Objections:

This Recommended Disposition ("Recommendation") has been sent to District Judge Lee P. Rudofsky. Either party may file written objections to this Recommendation. If objections are filed, they should be specific and should include the factual or legal basis for the objection.

To be considered, objections must be received in the office of the Court Clerk within fourteen (14) days of this Recommendation. If no objections are filed, Judge Rudofsky can adopt this Recommendation without independently reviewing the record. By not objecting, parties may also waive the right to appeal questions of fact.

II.    Introduction:

Plaintiff, Aaron Watt, applied for Title XVI supplemental security income on August 3, 2018, alleging disability beginning on January 1, 2013. (Tr. at 23). The application was denied initially and upon reconsideration. *Id*. After conducting a hearing, the Administrative Law Judge ("ALJ") denied Watt's claim on February 5, 2020 (Tr. at 38). The Appeals Council denied Watt's request for review. (Tr. at 1). The ALJ's decision now stands as the final decision of the Commissioner, and Watt has requested judicial review. For the reasons stated below, the Court

---

[1] On July 9, 2021, Kilolo Kijakazi became the Acting Commissioner of the Social Security Administration and is substituted as the Defendant in this action. Fed. R. Civ. P. 25(d).

should affirm the decision of the Commissioner.

### III.    <u>The Commissioner's Decision</u>:

The ALJ found that Watt had not engaged in substantial gainful activity since the application date of August 3, 2018.[2] (Tr. at 25). The ALJ found, at Step Two, that Watt has the following severe impairments: obesity, lumbar degenerative disc disease (DDD), obstructive sleep apnea, cervical spondylosis, chronic pain syndrome, and depressive disorder. (Tr. at 26).

At Step Three, the ALJ determined that Watt's impairments did not meet or equal a listed impairment. *Id*. Before proceeding to Step Four, the ALJ determined that Watt had the residual functional capacity ("RFC") to perform work at the sedentary exertional level, with additional limitations: (1) he cannot climb ladders, ropes, or scaffolds, but he can occasionally climb ramps and stairs; (2) he can no more than occasionally balance, stoop, kneel, crouch, and crawl; (3) he cannot operate foot controls with the lower extremities; (4) he can no more than frequently handle with the left upper extremity; (5) he can perform no more than occasional overhead reaching bilaterally; (6) he is limited to simple, routine, repetitive tasks featuring supervision that is simple, direct, and concrete; (7) he is limited to jobs classified by the Dictionary of Occupational Titles (DOT) as Specific Vocational Preparation (SVP) level 1 (i.e., jobs that can be learned within 30 days); and (8) he can tolerate only occasional changes in the workplace setting.[3] (Tr. at 28-29).

---

[2] For supplemental security income applications, the relevant time-period begins on the application date. (Tr. at 24-25).

The ALJ followed the required five-step sequence to determine: (1) whether the claimant was engaged in substantial gainful activity; (2) if not, whether the claimant had a severe impairment; (3) if so, whether the impairment (or combination of impairments) met or equaled a listed impairment; (4) if not, whether the impairment (or combination of impairments) prevented the claimant from performing past relevant work; and (5) if so, whether the impairment (or combination of impairments) prevented the claimant from performing any other jobs available in significant numbers in the national economy. 20 C.F.R. §§ 404.1520(a)-(g), 416.920(a)-(g).

[3] The SVP level listed for each occupation in the DOT connotes the time needed to learn the techniques, acquire the information, and develop the facility needed for average work performance. At SVP level one,

The ALJ observed at Step Four that Watt had no past relevant work. (Tr. at 37). Relying upon the testimony of a Vocational Expert ("VE"), the ALJ found that that, based on Watt's age, education, work experience, and RFC, there were jobs in the national economy that he could perform. (Tr. at 37-38). Therefore, the ALJ found that Watt was not disabled. *Id*.

## IV.   Discussion:

### A.   Standard of Review

The Court's function on review is to determine whether the Commissioner's decision is supported by substantial evidence on the record as a whole and whether it is based on legal error. *Miller v. Colvin*, 784 F.3d 472, 477 (8th Cir. 2015); *see also* 42 U.S.C. § 405(g). While "substantial evidence" is that which a reasonable mind might accept as adequate to support a conclusion, "substantial evidence on the record as a whole" requires a court to engage in a more scrutinizing analysis:

> "[O]ur review is more than an examination of the record for the existence of substantial evidence in support of the Commissioner's decision; we also take into account whatever in the record fairly detracts from that decision." Reversal is not warranted, however, "merely because substantial evidence would have supported an opposite decision."

*Reed v. Barnhart*, 399 F.3d 917, 920 (8th Cir. 2005) (citations omitted).

In clarifying the "substantial evidence" standard applicable to review of administrative decisions, the Supreme Court has explained: "And whatever the meaning of 'substantial' in other contexts, the threshold for such evidentiary sufficiency is not high. Substantial evidence . . . 'is more than a mere scintilla.'" *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting

---

an occupation requires only a short demonstration, while level two covers occupations that require more than a short demonstration but not more than one month of vocational preparation. *Hulsey v. Astrue*, 622 F.3d 917, 923 (8th Cir. 2010); Dictionary of Occupational Titles app. C, at 1009 (4th ed. 1991).

*Consolidated Edison Co. v. NLRB*, 59 S. Ct. 206, 217 (1938)). "It means—and means only—'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id*.

It is not the task of this Court to review the evidence and make an independent decision. Neither is it to reverse the decision of the ALJ because there is evidence in the record which contradicts his findings. The test is whether there is substantial evidence in the record as a whole which supports the decision of the ALJ. *Miller*, 784 F.3d at 477.

B.    Watt's Arguments on Appeal

Watt argues that the evidence supporting the ALJ's decision to deny benefits is less than substantial. He contends that: (1) the ALJ did not include all of the credible mental limitations that Watt experienced; (2) the ALJ's evaluation of the medical opinion issued by Patricia McGarry, M.D., was improper; (3) the ALJ failed to resolve an inconsistency between the VE's testimony and the DOT; and (4) the ALJ and Appeals Council lacked lawful authority to hear and decide Watt's claims.

Watt suffered from back and neck pain, which cervical and lumbar MRI bore out. Cervical MRI taken in April 2018 showed disc extrusion at C6-C7 with spinal canal stenosis and mass effect on the exiting nerve root. (Tr. at 510). Lumbar MRI from the same date showed moderate spinal stenosis at L5-S1 and abutment of the traversing S1 nerve root. *Id.* This certainly explained Watt's pain, which he said limited his sitting, standing, walking, and lifting. However, he said that medications were somewhat effective for pain. (Tr. at 53). Impairments that are controllable or amenable to treatment do not support a finding of total disability. *Mittlestedt v. Apfel*, 204 F.3d 847, 852 (8th Cir. 2000). As of the date of the hearing, Watt had not yet pursued physical therapy, and he did not require surgery. (Tr. at 57). Watt said he used a back brace. (Tr. at 53). So treatment

was conservative, and it was moderately effective.

Cervical and lumbar x-ray imaging were unremarkable (Tr. at 298-303), and at a clinical exam, Watt showed only mildly reduced range of motion in the cervical spine. (Tr. at 342). He had normal range of motion in all extremities. (Tr. at 304). Normal clinical findings may support an ALJ's decision to deny benefits. *Gowell v. Apfel*, 242 F.3d 793, 796 (8th Cir. 2001). Watt's gait was within normal limits, he walked without an assistive device, and he was able to stair climb and stand from a seated position. (Tr. at 404-407).

As for sleep apnea, treatment was conservative, and sleeping with a CPAP helped to some degree. (Tr. at 52).

The record reveals limited mental health treatment for depression. Watt's therapist noted in October 2019 that he declined medical care at the clinic and did not receive psychotropic medications from the clinic psychiatrist (Watt said he only wanted therapy, and not medication management). (Tr. at 544). But Watt said that the psychiatric medication his PCP prescribed were somewhat helpful. (Tr. at 538). Watt's complications from depression were exacerbated by his mother's death, an understandable development. *Id*. Still, situational stressors do not serve as a basis for finding mental impairments to be disabling. *Dunahoo v. Apfel*, 241 F.3d 1033, 1037 (8th Cir. 2001). Finally, Watt's therapist said that his prognosis was good if he followed all recommended treatment. (Tr. at 543).

Notably, mental status exams showed logical thought process, cooperative nature, clear speech, and good judgment. (Tr. at 36, 542). And Watt said that he could help care for his four young children, shop for groceries, take out the trash, socialize with family, remember to take his medications, read, and play games on his phone. (Tr. at 53-57, 247-251). A clinic note also read

that Watt was "highly skilled at cooking barbecue." (Tr. at 539). Such daily activities undermine his claims of disability. *Edwards v. Barnhart*, 314 F.3d 964, 967 (8th Cir. 2003).

The ALJ properly incorporated mental health symptoms into his analysis. First, he asked Watt about mental health issues at the hearing. (Tr. at 52). Second, he found depression to be a severe impairment. (Tr. at 26). Third, he discussed treatment and mental status examinations. (Tr. at 36). Finally, he placed mental functional restrictions on Watt in the RFC, including limiting him to SVP 1 jobs, which is the most basic kind of work. (Tr. at 28-29). Both the initial and reconsideration level psychiatric experts assessed moderate mental limitations, and the ALJ discussed those in his decision. (Tr. at 35-36). The ALJ noted the activities Watt could perform, including some interaction with others, which undermined his claims of mental disability. (Tr. at 28). The ALJ fully addressed and assessed Watt's credible mental health limitations.

In December 2019, Patricia McGarry, M.D., Watt's PCP, issued a medical source statement on a check box form. (Tr. at 554-557). She opined that Watt could not perform even sedentary work and would miss four days of work per month due to back and neck problems. *Id*. She did not elaborate or provide a narrative with references to the medical record.[4] The ALJ found this opinion to be unpersuasive. (Tr. at 35). Certainly, medical evidence from other providers conflicted with the very restrictive opinion of Dr. McGarry. Sonia Cox, M.D., observed gait within normal limits in December 2018, and found that Watt experienced no loss of balance. (Tr. at 404). Dr. Cox found normal muscle strength in Watt's extremities. (Tr. at 405-406). Jason Smith, M.D., who examined Watt in March 2018, recommended physical therapy and a walking regimen of

---

[4] A conclusory checkbox form has little evidentiary value when it cites to no medical evidence and provides little or no elaboration. *Anderson v. Astrue*, 696 F.3d 790, 794 (8th Cir. 2012).

three to four miles per day. (Tr. at 340-342). In spite of this recommendation, Watt had not begun

physical therapy as of the date of the hearing in January 2020. (Tr. at 57). A failure to follow a

recommended course of treatment weighs against a claimant's credibility. *Guilliams v. Barnhart*,

393 F.3d 798, 802 (8th Cir. 2005) So like the ALJ said, the balance of the medical notes

contradicted Dr. McGarry's statements. Also, the ALJ pointed out that lumbar imaging revealed

minimal abnormalities, and that range of motion was normal in the cervical spine. (Tr. at 35).

Finally, the ALJ stated that some of Dr. McGarry's conclusions were "unexplained." *Id*.

An ALJ must evaluate medical opinions for persuasiveness, while focusing, in particular,

on an opinion's consistency with the evidence and supportability. See 20 C.F.R. § 404, 1520c(a)-

(c)(2017). 20 C.F.R. § 416.920c(c)(1-2) (2017). *See Phillips v. Saul*, 2020 U.S. Dist. LEXIS

110370, No 1:19-CV-00034-BD, at \*4 (E.D. Ark. June 24, 2020) As set forth in the preceding

paragraph, the ALJ fairly and properly evaluated Dr. McGarry's opinion.

Next, Watt contends that the ALJ failed to resolve an inconsistency between the VE's

testimony and the DOT at Step Five. An ALJ has an affirmative duty to ask about any possible

conflict between the VE's testimony and the DOT before relying on that testimony to support his

findings. *Renfrow v. Colvin*, 496 F.3d 918, 920-21 (8th Cir. 2007); *Kemp v. Colvin*, 743 F.3d 630,

633 (8th Cir. 2014); Soc. Sec. Ruling ("SSR") 00-4p (2000), \*2-4, 2000 SSR LEXIS 8. The VE

must provide sufficient explanation for his testimony. *Id*.

In this case, the VE identified three jobs that Watt could perform: Document Preparer, with

46,000 jobs available nationally; Surveillance System Monitor, with 5600 jobs available

nationally; and Table Worker, with 3000 jobs available nationally. (Tr. at 63-64). Document

Preparer and Table Worker require the ability to reach frequently per the DOT. Watt contends this

constitutes a conflict with the RFC limitation to occasional overhead reaching. However, the ALJ

identified the possible conflict and asked the VE to resolve it. (Tr. at 64-65). The VE responded

that:

> You are correct, that limitation is not specifically addressed in the DOT.
> My answers are based on how the jobs are described in the DOT as
> being performed and then I use my knowledge, training, and experience
> to equate with any given hypothetical. I've worked over 20 years in the
> field of vocational rehabilitation. I work with injured individuals or
> disabled individuals in their efforts to return to work, as well as I have
> a Masters and Ph.D. in the field.

(Tr. at 65-66).

Based on Eighth Circuit law and recent decisions from this District, the ALJ obtained a

reasonable explanation of the conflict. *Twyford v. Comm. Soc. Sec.*, 929 F.3d 512, 519 (8th Cir.

2019); *Jones-Brinkley v SSA*, No. 3:20CV00058-JTK, 2021 WL 371689 (E.D. Ark. Feb. 3, 2021)

(a VE may rely on his judgment and experience with the jobs in questions to resolve any possible

conflict); *Smith v. SSA*, No. 3:19CV00373-BD, 2020 WL 7588580, (E.D. Ark. Dec. 22, 2020) (VE

properly identified the possible conflict between the overhead reaching requirement in the RFC

and in the jobs identified and said, based on her experience, the jobs, as actually performed, would

not require frequent overhead reaching).

Notably, the Surveillance System Monitor job does not require frequent reaching, so even

if, arguendo, the other two jobs were eliminated by the possible conflict, Watt could perform that

job. Watt contends that because the ALJ erred in stating that there were 66,000 jobs in the national

economy instead of the accurate number of 5600, his decision should be reversed.[5] (Tr. at 37-38,

---

[5] See *Byes v. Astrue*, 687 F.3d 913, 917 (8th Cir. 2012) (to show than any error was not harmless,
Plaintiff must provide some indication that the ALJ would have decided differently absent the error).

63-64). However, the Eight Circuit has held that as few as 500 jobs is a sufficient number of jobs at Step Five. *Jenkins v. Bowen*, 861 F.2d 1083, 1087 (8th Cir. 1988). Other Circuits agree. See *Nejat v. Comm'r Soc. Sec.*, 359 F.App'x 574, 578-579 (6th Cir. 2009); *Liskowitz v. Astrue*, 559 F.3d 736, 743 (7th Cir. 2009). The ALJ did not err at Step Five.

Finally, Watt makes an intricate argument that both the ALJ's decision to deny benefits and the Appeals Council's decision not to review the decision were constitutionally defective. Watt claims that it is unconstitutional for an executive Agency (the Social Security Administration) to be led by a single head who serves for a longer term than the President and can only be removed from his position for cause. The parties agree that 42 U.S.C. § 902(a)(3) violates the Separation of Powers Clause. Relying on *Seila Law LLC v. CFPB*, 140 S. Ct. 2193 (June 20, 2020), Watt asserts that the ALJ's decision (and therefore, every ALJs' decision) is thus, unconstitutional.

However, Watt simply cannot show a nexus between the appointment of the SSA Commissioner, the removability provision, and the ALJ's decision in his case (or the Appeals Council's decision). "ALJs exercise their authority independent of and without involvement by the Commissioner. Thus, whether the Commissioner, [which was the issue in *Seila Law*,] is or should be removable at will by the President is irrelevant to the ALJ's decision which claimant is appealing. Claimant's injury—an adverse decision by an ALJ—is not fairly traceable to the Commissioner's conduct." *Cooper v. Saul*, No. 21CV00038-CJW-MAR, 2021 WL 2908112, at *2 (N.D. Iowa July 9, 2021). See also *Brinkman v. Kijakazi*, No. 2:21CV00528-EJY, 2021 WL 4462897, at *2 (D. Nev. Sept. 29, 2021) ("Whether Plaintiff's claim is that the statutory limitations on the President's ability to remove the Commissioner is unconstitutional or that the Acting Commissioner was in office longer than permitted under statute, Plaintiff has not alleged any facts

or provided any evidence in any form suggesting that when the ALJ denied her claim for Social Security benefits, the then-SSA Commissioner played any role whatsoever in that decision.").

Contrary to Watt's argument, any possible constitutional violation is, at the most, harmless error. See *Arizona v. Fulminante*, 499 U.S. 279, 306 (1991); *Sea "B" Mining Co. v. Addison*, 831 F.3d 244, 253 (4th Cir. 2016). That is, Watt cannot show that the Commissioner's removal procedures had any actual prejudicial effect on the ALJ's decision. The ALJ followed SSA regulations and relevant case law to make his decision; the removal provision had no bearing on his decision. The "unlawfulness of [a] removal provision does not strip [an official] of the power to undertake responsibilities of his office." *Collins v. Yellen*, 141 S. Ct. 1761, 1787-1789 (2021).

The Court doubts that Watt would seek to upend even favorable ALJ decisions, across the board, when any constitutional violation has no direct nexus to the decision. As noted in *Pilla v. American Bar Asso.*, 542 F.2d 56, 59 (8th Cir. 1976), "where all are disqualified, none are disqualified." It is simply unworkable and improvident to unwind all agency decisions when the law does not demand it. As Justice Kagan explained in the *Collins* concurrence, the majority's decision, with its rightful emphasis on a showing of harm, would correctly prevent the "mass" of SSA decisions from being "undone." 141 S. Ct. 1802 (Kagan, J., concurring). Watt's final argument fails.

## V.  Conclusion:

There is substantial evidence to support the Commissioner's decision to deny benefits. The ALJ properly evaluated Watt's mental impairments and Dr. McGarry's medical opinion, and he properly resolved a possible conflict between the VE's testimony and the DOT. Finally, Watt has proven no nexus between any constitutional violation and the ALJ's decision. The finding that

Watt was not disabled within the meaning of the Social Security Act, therefore, should be affirmed.

The case should be dismissed, with prejudice.

IT IS SO ORDERED this 10th day of March, 2022.

_____

UNITED STATES MAGISTRATE JUDGE